591 A.2d 765

**Robert KESSENICH, Appellant,**

**v.**

**CITY OF PHILADELPHIA and County of Philadelphia, Appellees.**

Commonwealth Court of Pennsylvania.

Argued April 18, 1991.

Decided May 16, 1991.

penalties. We decline to do so here inasmuch as York Terrace has now complied with this Court's Order.

J. Matthew Wolfe, Philadelphia, for appellant.

Ralph J. Teti, Chief Deputy City Sol., Philadelphia, for appellees.

Before COLINS and SMITH, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

This is an appeal from an order of the Court of Common Pleas of Philadelphia County which approved the determina-

tion of the City Commissioners (Commissioners) to deny the "Petition for Cancellation of Registration" filed by Robert Kessenich (Appellant) because of improper service.

Appellant is a member of the 27th Ward Republican Committee. The 27th Ward encompasses the University of Pennsylvania, Drexel University, and the Philadelphia College of Pharmacy and Science. It is Appellant's position that, since the Ward consists mostly of a transient student population, the City's voter registration rolls, which delineate the qualified voters in the Ward, are filled with the names of individuals who have graduated and moved from the area. For this reason, before each primary and general election, the Republican Committee for the Ward attempts to strike from the voter registration rolls all the names of people who no longer reside at the addresses listed for them thereon.

On October 12, 1990, Appellant filed a petition to cancel the registration of approximately 1,000 individuals.[1] At the hearing held on this petition, not a single individual appeared to contest the assertion that he or she no longer resided at the address listed on the voter registration rolls. Nonetheless, the Commissioners denied Appellant's petition in its entirety, stating that the individuals involved had not been properly served. The trial court affirmed, and this appeal followed.

In appealing the merits of the trial court's order, Appellant seeks direction on how petitions for cancellation of voter registration should be served so that future petitions can be served properly and without challenge. Initially, we note that it is troubling that neither the Commission nor the trial court provided any reasons in their decisions regarding *why* they found service of Appellant's petition in this case

---

1. Appellant incorporated into his petition by exhibit the names of those individuals whose registration he wished to strike. At the hearing on the petition, however, Appellant admitted that, out of the 1,000 individuals incorporated into the petition, his servers had served or attempted to serve only about 700 of them. As such, Appellant voluntarily withdrew the names of the 300 or so individuals for whom he admitted no attempt at service had been made.

defective. The Commission simply flatly denied Appellant's petition because of improper service. Thereafter, the trial court approved the decision of the Commission on the ground that it had to defer to the Commission's discretion in the matter.

The procedure for properly serving petitions for cancellation of voter registration is found in Section 35 of the Act of March 30, 1937 (Act), P.L. 115, *as amended,* 25 P.S. § 623-35. That section provides in pertinent part:

> [T]he petitioners shall cause forty-eight (48) hours notice of the proceeding to be given to the person so registered by service by an adult person of known responsibility of a copy of the said petition, with the time and place fixed for the hearing endorsed thereon, either personally or by leaving a copy of the petition so endorsed with an adult person at his place of residence as given by him and recorded in the registers, if he cannot be found at the place given in the district register as his residence, and upon the filing by such person of an affidavit that the copy so endorsed has been so served by him, or that there is no adult person residing at the address given, the commission or commissioners assigned by the commission for that purpose shall proceed with a public hearing on the petition.

From the language of this statutory provision, it is clear that at least forty-eight hours before the hearing on a petition for cancellation of registration, the party who wishes to strike a name from the registration rolls must serve upon the person who is in jeopardy of being struck a copy of the petition with the time and place of the hearing endorsed thereon. If the person in jeopardy of being struck cannot be found, however, at the place listed in the rolls as his residence, the person serving the petition may leave a copy of the petition at the listed place of residence with any adult person. In that instance, the server must then file an affidavit, stating that the petition was served in that manner or, in a situation where no adult person resides at the

place of residence listed in the registration rolls, that the petition could not be served for that reason.

In this case, an issue was raised at the hearing on the petition regarding whether proper notice had been given to the people in jeopardy of being struck from the registration rolls. Notice was questioned because (1) the petition for cancellation of registration filed with the Commissioners purportedly did not contain notice of the time and place of the hearing, as required by Section 35 of the Act; and (2) the servers of the petition did not state in their affidavits that the petitions served by them were endorsed with the time and place fixed for the hearing.

Appellant testified at the hearing that, although his petition for cancellation of registration did not contain notice of the time and place of the hearing,[2] the individual hearing notices, which were separately printed on the back of his petition, were endorsed with that information. Specifically, Appellant stated:

Q. Can you describe what the petition looked like?

A. Yes. That is one side.

\* \* \* \* \* \*

A. On the other side, it has the person's name and address and it explains that there is a hearing today at this location and the name being presented is to be

**2.** The Petition for Cancellation of Registration filed by Appellant provides:

To the Honorable, the City Commissioners of Philadelphia:

The Petitioner herein, Robert Kessenich, respectfully represents:

1. That he is a qualified elector in the 23rd Division of the 27th Ward in the City of Philadelphia, residing at 437 South 44th St., Philadelphia, Pennsylvania.

2. That the individuals whose names are attached appear as registered voters on the permanent register of voters in the divisions listed of the 27th Ward of the City of Philadelphia, Pennsylvania.

3. Your petitioner avers that the registrations of the said individuals should be cancelled for the reason that they do not reside at the addresses at which they appear on the permanent register of voters. Your petitioner therefore prays that the City Commissioners correct said register by cancelling the registrations of the aforesaid individuals whose names and addresses are attached for the reasons above stated.

/s/ Robert Kessenich

stricken from the list because the person does not reside at that address.

Q. Does each individual sheet have the name of one of the individuals on this list?

A. Yes.

Q. And it has their address?

A. Yes.

Q. The ward and division?

A. Yes, it did.

Q. It noted that it was a petition for Cancellation of Registration of the voter?

A. Yes.

Q. And it has the date, time and place of the hearing?

A. Yes.

N.T., October 22, 1990 Hearing, p. 80. A sample copy of Appellant's petition, with an individual hearing notice printed on the back, was then submitted into evidence as Exhibit D. From our review of Appellant's Exhibit D, coupled with Appellant's testimony regarding the individual hearing notices, it appears that the petitions served were properly endorsed with notice of the time and place of the hearing.

█ As for the servers' affidavits, we note that Section 35 of the Act, 25 P.S. § 623–35, could be interpreted in two ways with regard to the question of whether the servers had to state in their affidavits that the petitions they served or attempted to serve were properly endorsed with notice of the time and date of the hearing.[3] One interpretation, which was the one advanced at the hearing, is that Section 35 of the Act requires servers to state in their affidavits that the petitions served by them were properly endorsed with the time and place of the hearing. Another interpretation of Section 35 of the Act is that the petitions served

---

3. For this reason, we suggest that in the future, Appellant might want to include the following language in his servers' affidavits:

... I did serve copies of the Petition for Cancellation of Registration[, with the time and place fixed for the hearing endorsed thereon,] on the individuals noted ...

Appellant's Exhibit E.

must be properly endorsed with that information, but it is not required that the servers swear to such in their affidavits.

Assuming arguendo that Section 35 of the Act requires the servers' affidavits to contain the notation that the petitions served were properly endorsed with notice of the hearing, we find this requirement to have no practical significance. According to Section 35, servers must only file an affidavit of service when they are unable to personally serve an individual in jeopardy of being struck from the registration rolls because that person no longer resides at the address listed for them thereon. When personal service cannot be effectuated, Section 35 allows for servers to leave a copy of the petition at the listed place of residence with any adult individual. If no adult person resides at the place of residence listed in the registration rolls, then the servers affidavit must provide that, at least, an attempt at service was made, but could not be effectuated for that reason.

Although Section 35 of the Act provides that service of a petition for cancellation of registration may be effectuated by leaving a copy of the petition with the current resident when the individual sought no longer resides at the address listed for him on the voter registration rolls, more likely than not, in that circumstance, the registrant would never receive the petition and, therefore, would never receive notice of the proceeding against him. For this reason, even if we required that servers provide in their affidavits that the petitions served by them in this manner were endorsed with time and place of the hearing, such would be a futile act because the individual would not have received notice anyway. As such, the absence in the servers' affidavits regarding whether the petitions served by them contained notice of the time and place of the hearing would be a non-fatal defect, if it could be termed a defect at all.[4]

4. Moreover, as we previously stated, it appears from the record that the petitions served were, in fact, accompanied by individual hearing notices which contained the time and place of the hearing.

Finally, while we cannot be sure, it seems that the Commissioners did not reject Appellant's petition because of improper notice. By denying Appellant's petition in its entirety, the Commissioners also denied the petition as it related to individuals served by Appellant and another witness who specifically testified at the hearing that the petitions served by them contained notice of the time and place of the hearing. This testimony, which supplemented the information provided in their affidavits, would have been sufficient to sustain the petitions which they served. The Commissioners, however, even refused to strike these individuals from the voter registration rolls.

The next issue raised at the hearing pertained to service. In this case, the following methods of service were utilized:

1. A copy of the petition and a hearing notice was given to an adult resident at the address who verified that the named individual did not reside there and the name of the resident was obtained.

2. A copy of the petition and a hearing notice was given to an adult resident at the address who verified that the named individual did not reside there and the full name of the person was not obtained, although a partial name, apartment number or indication that they were a current resident of the address was obtained.

3. A copy of the petition and a hearing notice was given to an apartment manager or front desk clerk who were adults and who verified that the individual did not reside there either through personal knowledge or through checking of a current list of the residents of the building.

4. A copy of the petition and a hearing notice was left or posted at the address where individuals were currently residing but no one could be found at home on the premises.

5. A copy of the petition and a hearing notice was left or posted at an address which was either a vacant home or a vacant lot.

The method invoking considerable controversy was method three, which involved leaving a copy of the petition and a

hearing notice with an apartment manager or a front desk clerk.

At the hearing, one of Appellant's servers testified that he served some of his petitions on the front desk clerk of a high rise complex in the Ward and the manager of an apartment building in the Ward after those individuals verified that the person who the server was seeking to serve no longer lived in the building. The server further testified that, in some instances, this type of service was necessary since the voter registration rolls did not list an apartment number for some registrants, only the street address of the building itself. In addition, the server testified that, even when an apartment number was provided, a more thorough search for the registrant was conducted by verifying that the individual did not live in the entire building because, otherwise, a voter could have moved within the building and, if notice had been left at his prior apartment, the voter would never have received it, even though he still resided at the same street address, but a different apartment number.

■ According to Section 35 of the Act, 25 P.S. § 623–35, if the person in jeopardy of being struck from the registration rolls cannot be found at the place listed in the rolls as his residence, the person serving the petition may leave a copy of the petition *at the listed place of residence with any adult person.* Under this provision, a voter, who simply registers by giving the street address of his or her building with no apartment number and, then, cannot be found to reside in any of the apartments within that building, could be served by handing a copy of the petition to an adult front desk clerk or apartment manager.

Moreover, pursuant to Section 36 of the Act, 25 P.S. § 623–36, the Commissioners may cancel the registration of any individual without a hearing:

> if the petitioners shall have filed with the commission an affidavit by an adult person of known responsibility of the service of a copy of the petition as provided in section thirty-five of this act, and, if the person so registered was

not served personally, that he could not be found at the place given in the district register as his residence, and that the person in charge thereof or some other person having knowledge of the names of all persons residing at the address given as such residence, to be mentioned by name, had declared that he or she was well acquainted with the names of all persons residing at the address given as such residence and that the person so registered had never been or was no longer one of them or that no such person is residing at the address given ... (Footnote omitted.)

From the language of this statutory provision, it appears clear that the legislature intended that service of a petition for cancellation of registration could be effectuated by serving a front desk clerk or apartment manager after that person verifies that the individual sought to be served no longer resides at the apartment number listed on the voter registration rolls.

■ Unfortunately, despite our discussion regarding notice and service of a petition for cancellation of registration, this case cannot end here. Because the Commissioners as well as the trial court issued blanket rulings regarding the service of Appellant's petition on all of the individuals he sought to strike from the registration rolls, even though the petition was served in several different manners and by several different people, we must vacate those rulings in their entirety and remand this matter for separate determinations as to whether each individual listed on Appellant's petition was served according to the requirements of the statute, as elaborated upon herein, and if not, why.[5] If service was effectuated properly, then the Commissioners may proceed with a hearing on the merits of the petition as it relates to that individual.

5. We note, however, that, from our independent review of the record, it appears that the servers of Appellant's petition followed the requirements of Section 35 of the Act, 25 P.S. § 623-35, with regards to serving a majority of the individuals listed in Appellant's petition.

90

Accordingly, we vacate the blanket determination made by the Commissioners and approved by the trial court and remand the petition to be acted upon in accordance with the foregoing opinion.

## ORDER

AND NOW, this 16th day of May, 1991, the decision of the Court of Common Pleas of Philadelphia County is hereby vacated and the above-captioned matter is remanded for further proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.